IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**FILED IN CHAMBERS**
U.S.D.C. Atlanta

**JUN 1 4 2011**

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

RANDALL JACKSON,

Plaintiff,

v.

JHD DENTAL, LLC, and DOBBS
MANAGEMENT SERVICE, LLC,

Defendants.

CIVIL ACTION NO.

1:10-CV-00173-JEC

## ORDER & OPINION

This case is presently before the Court on defendants' Motion for Summary Judgment [20]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion for Summary Judgment [20] should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is a breach of contract action arising from the termination of plaintiff's employment as president of defendant JHD Dental, LLC ("JHD"). Plaintiff contends that his termination violated the terms of his employment contract. (Am. Compl. [14].) He filed this suit in an effort to obtain severance pay and lost bonus opportunities under the contract. (*Id.*) Defendants argue that plaintiff is not entitled to any severance or bonus payments because he was terminated

"for cause." (Defs.' Mot. for Summ. J. [20].) They have filed a motion for summary judgment on all of plaintiff's claims. (*Id.*)

## I.  The Initial Negotiations

In 2007, plaintiff sought investors for a new chain of pediatric dental clinics. (Defs.' Statement of Material Facts ("DSMF") [20] at ¶¶ 10-11, 15.) To generate interest in his business venture, plaintiff created a presentation that outlined his plan for developing the clinics. (*Id.* at ¶¶ 15-16.) On September 14, 2007, plaintiff presented his plan to defendant Dobbs Management Services ("Dobbs Management"). (Smile Time Presentation, attached to Pl.'s Dep. [20] at Ex. 2.)

In the Dobbs Management presentation, plaintiff proposed to open twenty-two clinics in several states over a five year period. (DSMF [20] at ¶ 25.) For each clinic, plaintiff projected a time frame of six months from the funding stage to the opening. (*Id.* at ¶ 21.) Plaintiff forecast 2008 revenues of $3.4 million and 2009 revenues of $12.2 million. (*Id.* at ¶ 27.) He represented to defendants that revenues and after-tax income would steadily increase over the following five years. (*Id.* at ¶ 27.)

In addition to the timeline and financial information, the Dobbs Management presentation included a proposed leadership structure for the dental clinic business. (*Id.* at ¶ 16.) According to the proposed structure, the business would be run by a leadership team, consisting of plaintiff as chief executive officer and an unnamed

2

executive vice president with experience in launching pediatric dental groups. (DSMF [20] at ¶ 16.) Plaintiff anticipated that his former colleague, Dan Houser ("Houser"), would be named as the vice president. (Pl.'s Dep. [20] at 42.)

In early 2008, plaintiff and Houser prepared a more detailed "kickoff presentation" for Dobbs Management. (DSMF [20] at ¶ 29.) The kickoff presentation did not add any new financial projections to the original plan. (Smile Time Presentation, attached to Pl.'s Dep. [20] at Ex. 5.) However, the 2008 presentation expanded on the original plan by proposing "target" states for initial clinic development. (Id.) The kickoff presentation also included a more detailed timeline, itemizing specific tasks to be completed during each stage of clinic development. (DSMF [20] at ¶ 32.)

## II. The Relevant Contracts

Based on the information provided in the original plan and the kickoff presentation, defendants decided to invest in plaintiff's dental clinic business. (Id.) The business was launched through the execution of two documents: (1) an Agreement of Limited Liability as to JHD Dental, LLC ("JHD Dental Agreement") and (2) an Offer of Employment Letter ("Employment Agreement") from JHD to plaintiff. (JHD Dental Agreement [20] at Ex. E and Employment Agreement [14] at Ex. A.)

The JHD Dental Agreement established defendant JHD as a separate corporate entity organized as an LLC. (JHD Dental Agreement [20].)

3

The Dental Agreement named plaintiff as a shareholder of defendant JHD, subject to an initial capital contribution and future voluntary capital calls. (*Id.* at § 3.1(b) and DSMF [20] at ¶ 41.) In addition, the Dental Agreement required JHD to retain Dobbs Management for management services, including financial oversight and controls, risk management, benefits management and administration, and contractual or other administrative support. (DSMF [20] at ¶ 41.)

The Employment Agreement named plaintiff as the president of JHD, and set forth the general terms and conditions of plaintiff's employment. (*Id.* at ¶ 35.) Pursuant to the Agreement, plaintiff was entitled to a monthly salary of $14,583.33. (Employment Agreement [14] at § 1.) Plaintiff was also eligible for bonus opportunities, subject to certain conditions related to clinic openings and earnings. (DSMF [20] at ¶¶ 36, 38.)

In addition to the above terms, the Employment Agreement incorporated a clause providing for severance and bonus payments in the event that plaintiff's employment was terminated "without cause." (Employment Agreement [14] at § 5.) The Agreement defined "cause" to include:

  (i)     Your willful or intentional neglect to perform
          the duties and responsibilities of your
          position;

  (ii)    Your commission of an act of dishonesty, fraud,
          material violation of any written Company rule or
          procedure, intentional violation of law or
          governmental regulation, misappropriation of

4

funds or property, or willful or intentional misconduct;

(iii)    Your unprofessional or unethical conduct as determined in a final adjudication of any board, institution, organization or governmental agency having any privilege or right to pass upon your conduct;

(iv)    Your intentional or willful conduct which is detrimental to the reputation, character, business or standing of Company;

(v)    Your use of alcohol or drugs in such a manner as will or could materially injure or have a material adverse effect on your ability to perform your duties hereunder or the reputation of Company;

(vi)    Your willful violation of specific written reasonable, ethical and lawful directions of a majority of the Company's Managers;

(vii)    Your failure to perform assigned job responsibilities in a manner which is at least comparable to performance which could be expected from a person of average competence who is working with average diligence; or

(viii)    The failure of the Company to meet reasonable targeted financial goals as determined in the reasonable discretion of the Managers.

(*Id.*)

## III. **Opening Delays**

Within the first two months of his employment, plaintiff identified a location in Georgia as a potential clinic site. (DSMF [20] at ¶ 47.) However, after regulatory issues made opening a clinic in Georgia unfeasible, plaintiff started the process over again in Louisiana. (*Id.*) As plaintiff's efforts to secure a

location for the first clinic continued, he represented to defendants that a clinic would "optimally" open in the summer of 2008. (JHD Dental Status Meeting Agenda [20] at Ex. 10.) On May 15, 2008, plaintiff notified defendants of his plan to submit a letter of intent to lease a space at Delmont Plaza in Baton Rouge, and again proclaimed an optimal opening date of summer 2008. (*Id*. at Ex. 11.)

As time passed, and the lease for the first clinic was still not executed, Dobbs Management became involved in the lease negotiations. (DSMF [20] at ¶ 51.) Specifically, Dobbs Management put plaintiff in contact with a company that could expedite the negotiation process, provided plaintiff feedback on the lease terms, and engaged an attorney who would assist plaintiff with the lease language. (*Id*.) After the lease was signed, plaintiff sent an email identifying himself as the party responsible for the lease signing. (*Id*. at ¶ 54.) However, the parties disagree as to who ultimately was responsible for obtaining the lease. (Pl.'s Resp. Br. [23] at 14-15.)

Prior to signing the lease at the Delmont Village site, defendants learned that the location was in need of asbestos remediation. (PSMF [24] at ¶ 27.) The Delmont Village location also had an existing tenant. (*Id*. at ¶ 29.) Both of these factors are alleged to have delayed the opening, but the parties dispute the extent of the delay. The Delmont Village lease for the Baton Rouge clinic was finally executed on July 30, 2008, five months after

6

plaintiff selected Louisiana as a priority target and four months after designating Baton Rouge as a likely site. (DSMF [20] at ¶ 55.)

Michael Orians, the treasurer of Dobbs Management, met with plaintiff and Houser in September 2008 to discuss the effect of the opening delays on the business plan. (*Id.* at ¶ 58.) This meeting led to the first revision of the financial data provided in plaintiff's original plan. (*Id.* at ¶ 64.) In October 2008, plaintiff submitted a revised financial model to Orians, which projected one clinic to open in 2008 (down from three in the original model) and four to open in 2009. (*Id.*) Revenue projections were revised to $29,000 in 2008 and $6.2 million in 2009. (*Id.*)

Plaintiff hired a construction manager in September 2008 for the Baton Rouge clinic buildout. (DSMF [20] at ¶ 66.) Based on the timing of the construction contract, the target opening date for the Baton Rouge clinic was pushed back to approximately December 15, 2008. (*Id.*) However, the construction was delayed for various permitting and equipment reasons. (*Id.* at ¶ 67 and Pl.'s Dep. [20] at 145-146.) As a result of the construction delays, plaintiff pushed the target opening date of the Baton Rouge clinic back to January 2009. (DSMF [20] at ¶ 70.) However, the Delmont Village Clinic in Baton Rouge did not actually open until February 2, 2009. (PSMF [24] at ¶ 6.) The parties dispute whether the delay was unreasonable under the circumstances.

At the end of December 2008, Dobbs Management asked plaintiff to

present a third revised financial model to account for the additional delays in the first clinic opening date. (DSMF [20] at ¶ 81.) Plaintiff responded with a third revision on January 18, 2009. (*Id.* at ¶ 83.) The third revision reflected the fact that no clinics were opened and no revenue was generated in 2008. (*Id.*) It projected two clinic openings in 2009 and one clinic opening in 2010, with revenues of only $2.67 million for 2009. (*Id.*) Plaintiff claims that JHD's performance in February and March of 2009 was consistent with the third revised financial model. (PSMF [24] at ¶¶ 20-21.) Nonetheless, another capital call to the investors was made on or about March 16, 2009. (DSMF [20] at ¶ 84.)

## IV.  **Personnel Delays**

Based on plaintiff's recommendation, and simultaneously with plaintiff's employment, defendants hired Houser as Senior Vice President of Operations for JHD. (*Id.* at ¶ 45.) As early as November 2008, plaintiff and Dobbs Management began experiencing problems with Houser's performance. (*Id.* at ¶¶ 8, 85.) Houser ultimately was terminated "for cause" in February 2009, due to his inability to perform tasks delegated to him, including those relating to the construction process, staffing of the clinic, and preparation of business and policy manuals. (*Id.* at ¶ 90.) The parties dispute the extent to which plaintiff was responsible for Houser's poor performance. (*Id.* at ¶ 88 and PSMF [24] at ¶ 22.)

In addition to Houser's termination, plaintiff experienced and

8

arguably caused other delays in retaining the necessary personnel to implement the business plan. When plaintiff presented the 2008 revised financial projections to Dobbs Management, he indicated that he planned to hire approximately sixteen individuals prior to the first clinic opening, which at that time was scheduled for December 20, 2008. (DSMF [20] at ¶ 73.) After the original opening date was missed, plaintiff represented that he would hire thirteen individuals by January 24, 2009. (Id. at ¶ 74.) In fact, plaintiff had only hired two part-time dentists when the Baton Rouge clinic finally opened in February 2009. (Id. at ¶ 77.) Consequently, the clinic was only open two days a week for its first two months of operation. (Id. at ¶ 77.)

In particular, the hiring of a lead dentist for the Baton Rouge clinic was a point of contention between plaintiff and defendants. Orians repeatedly expressed frustration to plaintiff over his reluctance to move forward with offering the position to Dr. Hall, a dentist with thirty years of experience. (Id. at ¶ 94.) Ultimately, an offer was extended to Hall in April 2009, but Hall had not started working by the time defendants terminated plaintiff's employment on April 30, 2009. (DSMF [20] at ¶ 79.) At that time, one of the part-time dentists hired by plaintiff had quit, and there were still no full-time dentists at the clinic. (Id. at ¶ 80.)

## V. **Plaintiff's Termination**

In March 2009, Dobbs Management solicited and accepted a $40,000

9

investment from plaintiff, as part of a capital call made to all of JHD's investors. (PSMF [24] at ¶ 15.) A month later, defendants decided to terminate plaintiff's employment as a result of his continued failure to achieve the goals of JHD's original or revised business plan. (DSMF [20] at ¶ 101.) On May 1, 2009, Orians and Dobbs met with plaintiff to notify him of the termination. (*Id.* at ¶ 103.) At that meeting, Orians and Dobbs gave plaintiff a letter, dated April 30, 2009, formally terminating his employment. (*Id.*)

Prior to receiving the above letter, defendants never notified plaintiff that he was at risk of being terminated "for cause." (PSMF [24] at ¶ 17.) However, the termination letter purported to terminate plaintiff as a result of his "failure to meet reasonable financial goals and failure to perform assigned job responsibilities." (Termination Letter [14] at Ex. B.) The letter stated that plaintiff would be paid four months of his base compensation in severance, totaling $58,333.32. (*Id.*) The severance payment was conditioned on plaintiff executing a release and settlement agreement. (*Id.*) Plaintiff declined to accept the severance or to sign the release. (Letter from Peeler to Dobbs Management and JHD [14] at Ex. C.)

In a June 2, 2009 letter, Dobbs Management offered to pay plaintiff six months of severance pay if he accepted $90,500 for his ownership interest in JHD. (PSMF [24] at ¶ 39.) After a reappraisal, plaintiff was paid $183,211.00 for his ownership

interest in JHD.  (*Id.* at ¶ 40.)  The only additional payments plaintiff received following his termination were for (1) one day of wages for May 1, 2009 and (2) unused vacation time.  (DSMF [20] at ¶ 106.)

## VI.  **The Present Suit**

Plaintiff filed this suit on November 5, 2009 in the State Court of Fulton County.  (Compl. [1].)  Defendants removed the action on the basis of diversity jurisdiction.  (Notice of Removal [1].)  Plaintiff subsequently filed an Amended Complaint [14] asserting claims for: (1) breach of contract, (2) unjust enrichment, and (3) attorney's fees under O.C.G.A. §§ 9-15-14 and 13-6-11.  (Am. Compl. [14] at ¶¶ 26-35.)  As the basis for his breach of contract and unjust enrichment claims, plaintiff contends that he is owed additional severance pay and bonus payments under the Employment Agreement.  (*Id.*)  In addition, plaintiff argues that he is entitled to attorney's fees as a result of defendants' "wholly unfounded" position that they are not required to make the specified payments.  (*Id.* at ¶ 35.)  Defendants have moved for summary judgment on all of plaintiff's claims.  (Defs.' Mot. for Summ. J. [20].)

## DISCUSSION

### I.  **Summary Judgment Standard**

The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

11

entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).[1] The
party seeking summary judgment bears the initial burden to show that
there are no genuine issues of material fact. *Celotex Corp. v.
Catrett*, 477 U.S. 317, 323 (1986). If that burden is not discharged,
the motion must be denied and the court need not consider any showing
made by the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112,
1116 (11th Cir. 1993).

If, on the other hand, the movant satisfies its initial
responsibility, the burden shifts to the nonmoving party to show the
existence of a genuine issue of material fact. *Clark v. Coats &
Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Where the movant
bears the burden of proof on an issue, it "must show that, on all the
essential elements of its case . . . no reasonable jury could find
for the non-moving party." *Fitzpatrick*, 2 F.3d at 1115. Where the
nonmovant bears the burden of proof, the moving party need only show
the absence of evidence to support the nonmovant's case, or
affirmative evidence demonstrating that the nonmovant will be unable
to prove its case at trial. *Id.* at 1115-1116.

There is no "genuine" issue for trial "unless there is
sufficient evidence favoring the nonmoving party for a jury to return
a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1]   Rule 56 was amended as of December 1, 2010.  However, the
Advisory Committee Notes clarify that "[t]he standard for granting
summary judgment remains unchanged."  Advisory Committee's Notes on
2010 Amendments to FED. R. CIV. P. 56.

242, 249 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law . . . properly preclude the entry of summary judgment." *Id.*

In deciding a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Johnson v. Governor of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005). "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). *See also ProfiTel Grp., LLC v. PolyOne Corp.*, 238 Fed. App'x 444, 450 (11th Cir. 2007)(holding same). Where reasonable minds could differ on the inferences raised from the undisputed facts, the court should deny summary judgment. *Herzog*, 193 F.3d at 1246.

## II. **Plaintiff's Breach of Contract Claim**

### A. **Burden of Proof**

As the procedure for ruling on a motion for summary judgment depends on which party bears the burden of proof at trial, the Court initially must resolve a dispute between the parties on this issue. *Fitzpatrick*, 2 F.3d at 1115-1117. In Count I of his complaint, plaintiff asserts a breach of contract claim against defendants for their failure to make severance payments allegedly required by the Employment Agreement. Under Georgia law, plaintiff is required to

13

plead and prove all of the essential elements of this claim.[2] *See* O.C.G.A. § 13-3-1 and *Broughton v. Johnson*, 247 Ga. App. 819, 819 (2001)(recovery for breach of contract requires plaintiff to prove "[the] subject matter of the contract, consideration, and mutual assent by all parties to all contract terms"). This includes performance and the satisfaction of any conditions precedent. *Sagon Motorhomes, Inc. v. Southtrust Bank of Georgia, N.A.*, 225 Ga. App. 348, 350 (1997).

Neither party contends that the Employment Agreement is ambiguous with respect to the severance clause. The clause requires JHD to make severance payments "subject to" certain "conditions." (Employment Agreement [14] at § 5.) As one of the specified conditions, the clause provides that JHD is "liable for such payment only if" plaintiff's employment is terminated "without [c]ause (as defined below)." (*Id.*)

The Agreement's express mention of "conditions" suggests that the severance obligation is subject to the condition precedent of plaintiff being terminated "without [c]ause." That conclusion is confirmed by the Agreement's use of the terms "subject to" and "only if." *See Va. Props., Inc. v. Rose*, 210 Ga. App. 878, 879-880 (1993)(contractual language requiring a bonus "if the Company's net sales and net profits . . . exceed the applicable levels" imposes a

---

[2] The parties agree that Georgia law governs this dispute. (Pl.'s Am. Compl. [14] at ¶¶ 26-35 and Defs.' Br. [20].)

condition precedent). As such, plaintiff bears the burden at trial of demonstrating that the condition has been satisfied: that is, that he was terminated without cause. *Sagon Motorhomes, Inc.,* 225 Ga. App. at 350.

Plaintiff cites authority for the proposition that a defendant has the burden of proving an affirmative defense when it "admits the essential facts of [the] petition but sets up other facts in justification or avoidance." *See Carver v. Jones,* 166 Ga. App. 197, 198 (1983). However, this proposition does not apply here because defendants do not admit the essential facts of the petition. (Answer [2] at ¶ 12.) Rather, defendants offer affirmative evidence attempting to negate plaintiff's contention that his termination was "without [c]ause." *Id.* (a defendant does not raise an affirmative defense by asserting facts attempting to negate the proposition that the plaintiff complied with a condition precedent).

The apparent confusion over the burden of proof seems to arise from cases where an employer terminates an employee in violation of a contract for a set term, and then tries to avoid its obligation by claiming the termination was "for cause." *See ISS Int'l Serv. Sys., Inc. v. Widmer,* 264 Ga. App. 55 (2003) and *Savannah Coll. of Art and Design, Inc. v. Nulph,* 265 Ga. 662 (1995). In that context "termination for cause" is muddled shorthand for a material breach, which is an affirmative defense. *See City of Douglasville v. Hildebrand,* 175 Ga. App. 434, 436 (1985) and *Shared Med. Res., Inc.*

*v. Americus and Sumter Cnty. Hosp. Auth.*, 672 F. Supp. 509, 513 (M.D. Ga. 1987)("The true issue in *Hildebrand* was whether or not the city had borne its burden of showing a material breach").

In this case, to the contrary, termination "without [c]ause" is a prerequisite to the additional benefit of severance pay under an otherwise valid contract. As mentioned above, the burden of proving that the prerequisite has been met falls squarely on plaintiff. *Sagon Motorhomes, Inc.*, 225 Ga. App. at 350. Thus, in order to prevail on their motion for summary judgment, defendants must show either "[the] absence of evidence to support [plaintiff's] case[, or] affirmative evidence demonstrating that [plaintiff] will be unable to prove [his] case at trial." *Fitzpatrick*, 2 F.3d at 1115-1116.

## B.   **Analysis**

In support of their motion for summary judgment on plaintiff's breach of contract claim, defendants contend that their termination of plaintiff's employment was "with cause" as a result of:   (1) plaintiff's "willful . . . neglect to perform the duties and responsibilities" of his position, (2) conduct by plaintiff that was "detrimental to the reputation, character, business or standing" of JHD,   (3)   plaintiff's   "failure   to   perform   assigned   job responsibilities" in a manner that would be expected from a person of "average competence" working with "average diligence," and (4) the failure of JHD to meet "reasonable targeted financial goals as determined   in   the   reasonable   discretion   of   the   [m]anagers."

16

(Employment Agreement [14] at § 5.) Contrary to defendants' argument, there are questions of material fact as to whether any of the above definitions of "cause" was met in this case.

1. Neglect of duties and responsibilities

Defendants have not offered any facts, much less undisputed evidence, that plaintiff willfully or intentionally neglected to perform the duties and responsibilities of his position. As the moving party, defendants bear the initial burden of "informing the . . . court of the basis for its motion" and identifying record evidence demonstrating the "absence of a genuine issue of material fact." HR Acquisition I Corp. v. Twin City Fire Ins. Co., 547 F.3d 1309, 1314 (11th Cir. 2008). Defendants have not come close to meeting that burden with respect to their contention that plaintiff "neglect[ed] the duties and responsibilities" of his position. In fact, Orians admitted in his deposition that he had no information to support such a claim. (Orians Dep. [20] at 50.) Thus, a question of fact remains as to whether plaintiff's termination was justified by his willful neglect of the duties of his job.

2. Conduct that was detrimental to JHD

Likewise, defendants fail to present conclusive evidence that plaintiff engaged in intentional conduct that was "detrimental to the reputation, character, business, or standing" of JHD. As a general matter, whether an employee acts unprofessionally or in a manner that discredits his employer's "reputation, character and standing" is a

17

question of credibility that must be resolved by the jury. *Salhab v. Tift Heart Ctr., P.C.*, 260 Ga. App. 799, 801 (2003). Moreover, defendants to not cite any legal authority or record evidence to support their argument that plaintiff's conduct, as a matter of law, was detrimental to JHD's reputation or standing.

### 3. The remaining bases for plaintiff's termination

Neither is the Court able to find, as a matter of law, that the undisputed facts satisfy either of the remaining two definitions of "cause" under the Employment Agreement. In support of their argument to the contrary, defendants cite record evidence showing that JHD consistently failed to meet the financial and other goals set by plaintiff in his original and revised projections. (Defs.' Br. [20].) In spite of plaintiff's admitted failure to adhere to the original or second revised plan, there are remaining questions of fact as to whether plaintiff's termination was justified either by his own incompetence or by JHD's less than stellar performance. (Employment Agreement [14] at ¶ 5.)

As an initial matter, the Court rejects defendants' position that the performance-related provisions of the Employment Agreement should be interpreted to encompass plaintiff's own scheduling and financial projections. The relevant contractual language is not ambiguous, and thus not subject to judicial construction. *See Ainsworth v. Perreault*, 254 Ga. App. 470, 476 (2002)("where the

18

language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court"). The language itself does not reference, and cannot be assumed to incorporate, plaintiff's own projections as to clinic openings and revenue. It simply requires that plaintiff "perform assigned job duties" in a reasonably competent manner and that JHD meet "reasonable targeted financial goals" in the "reasonable discretion" of the managers. (*Id.*)

Moreover, the Employment Agreement contains a merger clause, which states that:

Any prior or contemporaneous agreements or representations whether oral or written, which may have been made or discussed but which are not included herein, are of no force or effect whatsoever or at all.

(Employment Agreement [14] at § 6.) Thus, to the extent that defendants and plaintiff discussed using the first or second revised plan as a basis for judging plaintiff's or JHD's performance, the merger clause bars consideration of such evidence. *Choice Hotels Int'l, Inc. v. Ocmulgee Fields, Inc.*, 222 Ga. App. 185, 187 (1996)("Particularly when a contract contains a merger clause, parol evidence is inadmissible to challenge the unambiguous terms of the contract"). Alternatively, to the extent defendants are suggesting that the third revised plan provided a new standard by which plaintiff's conduct would be judged, there is nothing in the record to suggest that the parties intended to modify the Employment Agreement. *Id.* ("parol evidence of a mere understanding arrived at

19

subsequent to the contract as to the meaning of the prior writing is inadmissible"). In any case, the evidence as to whether plaintiff complied with the third revised plan is in dispute.

In the final analysis, the objective benchmarks in the Employment Agreement place limitations on defendants' discretion, and thus preclude summary disposition of this case. *See ULQ, LLC v. Meder*, 293 Ga. App. 176, 178-80 (2008) (where the termination decision is not subject to absolute or uncontrolled discretion, a good faith obligation is implicated). Questions of reasonableness and "average" competence and diligence, which are necessarily implicated by the express language of the Agreement, raise issues of fact for the jury except in the clearest cases. *Id.* at 180. The evidence in this case is not so one-sided as to authorize a ruling on these issues as a matter of law. Accordingly, the Court **DENIES** defendants' motion for summary judgment on plaintiff's breach of contract claim.

## C.   **Issues For The Jury**

Based on the evidence in the record, there are four issues of fact that remain for resolution by the jury. Essentially, these facts involve a dispute over the reasonable inferences raised by otherwise undisputed evidence:

> (1)   Whether plaintiff performed in a manner which is at least comparable to the performance that could be expected from a person of "average competence" who is working with "average diligence."
>
> (2)   Whether JHD failed to meet "reasonable targeted financial goals" as determined in the

20

"reasonable discretion" of the managers.

(3) Whether plaintiff willfully or intentionally neglected to perform the duties and responsibilities of his position.

(4) Whether plaintiff intentionally or willfully conducted himself in manner which was "detrimental to the reputation, character, business or standing" of JHD.

These questions will be presented to the jury after a trial of the case on the merits.

## III. **Unjust Enrichment**

In Count II of his complaint, plaintiff asserts a claim for unjust enrichment. Unjust enrichment is an equitable claim that only applies in the absence of an enforceable contract. *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1998). Thus, when pleading unjust enrichment, a plaintiff may not allege or incorporate by reference an allegation that the parties had an enforceable agreement. *Ga. Tile Distrib., Inc. v. Zumpano Enter., Inc.,* 205 Ga. App., 487, 491 (1992) (the theory of unjust enrichment applies only "[i]n the absence of a contractual agreement"). *See also Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006)(Thrash,J.) (prohibiting an equitable claim of promissory estoppel where the existence of a contract was undisputed).

Count II of plaintiff's complaint adopts and incorporates allegations that specifically assert the existence of a valid contract. (Am. Compl. [14] at ¶ 29.) Moreover, plaintiff does not

21

offer his unjust enrichment claim as though it were in the alternative. Rather, he expressly claims in the same count in which he asserts the unjust enrichment claim that the parties had a valid contract. (*Id.*) Under the circumstances, plaintiff's unjust enrichment claim must be dismissed as a matter of law. Accordingly, the Court **GRANTS** defendants' motion for summary judgment as to plaintiff's unjust enrichment claim.

## IV. Attorney's Fees

In Count III of his complaint, plaintiff seeks attorney's fees under O.C.G.A. §§ 9-15-14 and 13-6-11. (Am. Compl. [14] at ¶¶ 34-35.) O.C.G.A. § 9-15-14 is not available to civil litigants in federal court. *See Bruce v. Wal-Mart Stores, Inc.*, 699 F. Supp. 905, 906 (N.D. Ga. 1988)(Forrester, J.) and *NCI Grp., Inc. v. Cannon Serv., Inc.*, 2009 WL 2411145 at *17 (N.D. Ga. 2009)(Martin,J.). Defendants' motion for summary judgment as to plaintiff's claim under O.C.G.A. § 9-15-14 is therefore **GRANTED**.

However, attorney's fees may be available to plaintiff under O.C.G.A. § 13-6-11. That statute allows a jury to award fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. Recovery under the statute is ancillary to an award of damages on an independent cause of action, and is generally left to the jury. *ISS Int'l Serv. Sys.*, 264 Ga. App. at 62.

Given the preference under Georgia law for jury resolution of a

claim for fees under O.C.G.A. § 13-6-11, and the open question of whether the jury will award damages to plaintiff on Count I of his complaint, summary judgment on plaintiff's claim for fees is inappropriate at this time. Defendants' motion for summary judgment as to plaintiff's claim for attorney's fees under O.C.G.A. § 13-6-11 is thus **DENIED**.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [20] is **GRANTED** with respect to plaintiff's claims for unjust enrichment and attorneys' fees under O.C.G.A. § 9-15-14 and **DENIED** for the remainder of plaintiff's claims.

SO ORDERED, this  $\cancel{14}$  day of June, 2011.

JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE